The next case is Karyn Stanley v. City of Sanford, Florida, and the United States is here as amicus. Patricia Sigmund is here for the appellate Stanley. Jessica Conner is here for the City of Sanford, and Jonathan Backer is here for the Department of Justice. And my name is Patricia Sigmund, and I represent Karyn Stanley in this appeal. I begin with two equally important points. First, the City doesn't know that I just pulled this 24-month rule out of thin air, and this very unusual record requires reversal under Rule 56 on I believe this is the first circuit court to dig into the Gonzalez issue since the Congress amended the ADA. And of the several approaches that this court could take, which would all give Ms. Stanley a claim under the ADA, the narrowest one is to update Gonzalez by reading it with the language of the ADAAA and applying the at or subsequent to language consistent with the updated amendments. Aren't we still applying that language, though, to a qualified individual with a disability? I would submit that that's what the ADAAA changed, and so I would submit that we are not. Because what Congress did with the ADAAA was that they uncoupled the qualified individual from the disability, making more flexibility consistent with Congress's very strong intent for broad coverage and to ensure protection for people with disabilities. You know, it used to say a qualified individual with a disability, due to the disability of that individual. What it now says is you can't discriminate against a qualified individual on the basis of disability. But you still have to be a qualified individual, though, so I don't see why that, you know, it's an interesting argument, I think, on kind of if we were looking at it for the first time, but it's hard for, just speaking for myself, for me to see how we overrule a prior panel. I don't think we can see it as an update, I think it's an overruling, and where the term that was interpreted there was qualified individual with a disability, and it doesn't seem to me that anything changed with respect to that. But, Erin, I agree that the difference is very material, and additionally, in Sandy's case, she actually was a qualified individual at the time of the discriminatory decision in 2003. She was fully able to perform her essential functions. Gonzales says they had to be a qualified individual with a disability because Gonzales was specifically drilling in on the text of the ADA as it was at that time, and Congress purposely changed all of that. And we have people who are covered under the ADA who aren't disabled at all. For example, people who are associated with someone with a known disability are protected. People with a perceived disability, people with a record of impairment, they're also covered. I think we have to look at, we know former employees can sue under the ADA, right, because they do it all the time. People get terminated from their employment, they bring a termination claim under the ADA. What are they suing for? They're suing for discrimination after they're during the employment. So how is she doing that? I'm curious about that. I understood this case to be she was a disabled employee who argued that she was being discriminated against in retirement benefits. Your Honor, so she, this is a standalone fringe benefit that's actually part of the personnel rules that the city invokes. It's not a part of an insurance plan or any kind of an insurance program. There's no math behind it. And so what she, what she worked there for 20 years approximately. At the time of the discriminatory act in 2003, she was a qualified individual. She was a firefighter. She got promoted to lieutenant. She was doing the job. She then remained a qualified individual and then became a qualified individual with a disability in 2016 when Parkinson's disease, unfortunately, was diagnosed. From 2016 until 2018, before she went out into disability retirement, she was doing the job. She was there. She was a lieutenant. She was on the truck. She was doing the job, fully qualified. And those were still her terms and conditions of employment at that time. And we know under Hishon, the U.S. Supreme Court said, when these are part of your terms and conditions, even if they don't get realized until after the employment, they're part of your terms and conditions. And the ADA specifically prohibits discrimination in the terms and conditions. All right. Thank you, Ms. Zegman. Thank you, Your Honor. Backer. Good morning, Your Honors. May it please the Court. Jonathan Backer for the United States Justice Amicus. Judge Grant, I want to pick up with your question about overruling a prior panel decision. To be clear, the United States, and I don't think plaintiffs actually disagreed, I don't think this Court needs to overrule Gonzales to analyze this case with the Veritas amendments in mind. Remember, Gonzales involved very different facts. In that case, the employee was terminated and there was a decision post-termination to tax all benefits for AIDS. And it also had an effect post-employment. So the entire range of conduct, both the discriminatory act and the effect of that discriminatory decision was realized post-employment. Here, we have a totally different factual circumstance. Here, a decision was made during Ms. Stanley's employment to change the terms, conditions, or privileges of her employment to include an allegedly discriminatory policy. And that effect was realized post-employment. So that's not, so this Court doesn't need to address the facts of Gonzales to take notice of what the text of the statute says today. And as plaintiffs have said, this is a materially different statute than exists in any of the circuit-level cases that have addressed whether former employees can sue because of the Fair Pay Act amendments. What the Fair Pay Act amendments... Well, you were, you're starting to answer the question. I was going to ask it then. What the Fair Pay Act amendments do is they say you can have a discriminatory decision at one time. And then a claim, a Title I claim, can reaccrue at multiple points in time, including in the post-employment period, when that decision has an impact, an effect, in the words of 2000 EF, D3A, on the employee. So here, Ms. Stanley was a qualified individual. She was able to perform the essential functions of the job throughout her 20 years of employment as a firefighter. She was also a qualified individual who happened to have a disability during the course of her employment, between 2016 and 2018. So you have the discriminatory term, condition, or privilege of her employment coincided with a time when she was a qualified individual. Now, no one's disputing that post-employment, she's no longer a qualified individual, but the discriminatory act at issue here is not the distribution of the benefit here. It was the decision and the retention of an allegedly discriminatory term, condition, or privilege throughout her 20 years of employment. Why wouldn't it be when her employer tells her, you're denied the disability, you're denied the benefits that the non-disabled employees are getting, when they actually tell her that? Because I think it's interesting, the sort of how the Fair Pay Act came about, where Justice Alito's majority opinion says, no, no, no, no, you don't have multiple different discriminatory acts with each paycheck, right? You have the decision, and then you have the effect of the decision. And Congress sort of took that at face value in updating the statute and said, if you look at 2000E5E3B, it talks about liability accruing. That's what the Fair Pact is changing. It says that you have a single discriminatory act, which is the discriminatory decision, and then liability accrues at multiple points and times, both when the decision happens, when an employee becomes subject to it, or when she is affected by it. So Congress sort of took the holding of Ledbetter at face value and then updated the statute such that liability could accrue at multiple points in time. So again, here, Ms. Stanley was subject to a discriminatory decision by a allegedly discriminatory term condition or privilege, part of her package of employment benefits throughout her 20 years, and the effect of that was realized post-employment, so liability can re-accrue. But why doesn't she still need to be a qualified individual when she brings the claim? I mean, it seems that this is going further than, say, it would have with Lily Ledbetter, who was a woman at the time of the decision and still a woman when she brought suit. Why isn't this doing something different, tacking something on to what Congress was trying to do in the Lily Ledbetter Act? Well, it wasn't because of the plain text of the statute, which says the qualified individual language pertains to when discrimination occurred. If this Court were to interpret that as saying you need to be a qualified individual at the time that you bring a claim, well, that would kick out all sorts of Title I claims that no one disputes are cognizable post-employment, like a termination claim. If you've been terminated and you are no longer qualified to perform the essential functions of the job, well, you could still bring a Title I claim to get back pay for the period when you still were a qualified individual. So the question isn't at the time that you're bringing a claim, are you a qualified individual? The question is, are you a qualified individual at the time that the discrimination occurred? And what the Fair Pay Act changes about the statute is it makes clear that you can analyze this question at two separate points in time. You can have the analysis being when the discrimination occurred, were you a qualified individual? And that's a separate question of when you have a claim based on when the claim accrued, which includes in the post-employment period. So we would ask that this Court reverse the district court's holding on the ADA claim and remand for further consideration. All right. Thank you, Mr. Backer. Ms. Conner. Your Honors, may it please the Court, Jessica Conner on behalf of the affilee, City of Sanford, Florida. Title I of the ADA prohibits discrimination against a qualified individual on the basis of disability. The City's health insurance subsidy policy did not violate the ADA because it was based on years of service and not on disability. Under the City's subsidy policy, only those retirees with 25 years service to the City received the subsidy to age 65. Ms. Stanley only completed 20 years of service to the City. Had she completed 25 years, she would have received the full subsidy despite the fact that she had a disability. It had nothing to do with her disability and had everything to do with the fact that she simply didn't complete 25 years of service to the City. However, even though disability retirees do not complete 25 years of service to the City, the City made an exception and provided disabled disability retirees with 24 months of the subsidy rather than nothing at all like all other retirees with less than 25 years of service received. But that only applies to disabled employees, right? Non-disabled employees, subject to the 24-month rule, they get their insurance paid for up until the age of 65. So there is a difference. She's being treated, those employees who are disabled are being treated from employees who are not disabled. You can't disagree with that. No, Your Honor. All employees, whether they're disabled or non-disabled, if they work for 25 years, they get the subsidy. She was fully eligible for that subsidy throughout her entire employment, so long as she completed 25 years. But she didn't get the benefits after 24 months, right? Correct. And neither does any other person with 20 years of service. You have to have 25 years of service to get the full subsidy to the age 65. So if someone had a reasonable accommodation, if they were disabled but had a reasonable accommodation that allowed them to perform their job functions from year 20 to year 25, they too would get the subsidy, right? Absolutely. And Ms. Stanley became disabled during her employment and continued to work for, I think, two or three years. And during that time, if she had just worked a couple years more, she too would have been given that full subsidy. But instead, like all of these similarly situated non-disabled employees with only 20 years service, she was actually treated better than them because other non-disabled employees who only have 20 years of service get nothing at all, no subsidy. The city, out of compassion, gave its retirees who did not complete a full 25 years, out of compassion, instead of giving them nothing like everybody else, gave them 24 months of the similarly situated cohorts, did not receive. When do you think the sort of discriminatory act happened? So that seems to be kind of the root of the issue here. They say it happened while she was employed. Another way to look at it is it happens once she retires and doesn't get the subsidy that she says she wants. What do you say? So first of all, there is no discriminatory act either during employment or... What is she suing over then? If we're going to assume the 24-month policy discriminates on the basis of disability and not and isn't based on years of service, it would only have adversely affected her when she was a retiree, completely and totally disabled and completely unable to perform the essential functions of her job. Because discrimination under the ADA, under Title I, is defined as an act that adversely affects someone because of a disability. She was not adversely affected by the 24-month rule when she was a qualified individual during her employment, when she could perform the essential functions of her job, because the 24-month rule never would have applied to her until she became totally disabled and retired early. Had she continued to work, even while being disabled, with reasonable accommodation, that rule never would have applied to her during her employment. It never would have applied to her. She would have gotten the same benefit that 25-year retirees get. So there's no way that this rule could have impacted, adversely affected, or discriminated against her while she was a qualified individual. The impact came when she became no longer a qualified individual, when she was unable to perform the essential functions of her job as a totally disabled former employee retiree. That's when the impact came. But again, it wasn't even discriminatory at that time because it wasn't applied to her because she was disabled. It was applied to her because she didn't complete 25 years of service to the city. So why isn't the, I mean, just to play devil's advocate, I mean, so the policy changed in 2003, right? The policy used to be, correct me if I'm wrong, but I thought the policy used to be if you retire because of disability, no matter how long you've been an employee, you get full benefits. Is that right? Correct. And so then they changed that in 2003 and they created these sort of separate tracks where, well, maybe not separate tracks, but yeah, separate tracks, where you serve 25 years, you get the full benefits. If you retire because of a disability short of 25 years, you get 24 months of benefits, right? Correct. The city changed its policy to treat its disabled retirees exactly the same as all other non-disabled retirees with the same length of service because the city only required non-disabled retirees to complete the 25 years in order to receive the full subsidy. Anybody else, non-disabled, disabled, didn't receive anything. So it changed its policy basically to treat her the same as everybody else, but out of compassion, instead of giving her nothing, gave disability retirements 24 months of the year. Why isn't that change in 2003 the thing that, I mean, why isn't that the thing that we're fighting about? Why isn't that the key moment as opposed to the latter moment where she happens to be disabled and now she wishes that the policy had been pre-2003, but the thing that actually is affecting her is the change in 2003 and not the payments themselves. Why isn't that the way to look at it? Title I of the ADA describes discrimination as an act that limits and has an effect of adversely affecting an employee because of a disability. But when the policy, the 21 month rule was adopted in 2003, it did not adversely affect her at all. She wasn't disabled. It never would have applied to her. It may never have applied to her so long as she continued to work for 25 years. That rule never would have applied to her as a qualified individual during her employment. And the arguments that the Lilly Ledbetter Act or the amendments to the ADA in 2008 somehow changed this analysis is meritless because those amendments did not address the qualified individual. The ADA in 1990 and the ADA as amended in 2008 still have the exact same language that requires a qualified individual or defines a qualified individual as an individual with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires. That's the language we're talking about. That's the language that was interpreted in Gonzalez. That language has not changed. The Lilly Ledbetter Act has nothing to do with the qualified individual definition under the ADA. All the Lilly Ledbetter Act did was extend the statute of limitations for claims that were already unlawful under the ADA. So if you can't state a cause of action under Title I of the ADA because you're not a qualified individual, the Lilly Ledbetter Act doesn't suddenly transform a lawful decision that's not actually one of the ADA's suddenly into a claim that they can bring I want to make sure I'm understanding. I think maybe several of you have said that in 2003 she was a qualified individual, but that's not how I understood it because I thought that to be a qualified individual under the ADA, you had to have a disability and want to be able to do the jobs with or without reasonable accommodations. Am I misunderstanding that? A perfectly healthy person, except for if they're associated with these other kind of buckets, but a perfectly healthy person is not a qualified individual under the ADA, are they? Well, a qualified individual is defined as someone who can perform the essential functions of their job, but you cannot bring a Title I ADA claim unless the qualified individual is discriminated because of the disability. So yes, you do have to have a disability to bring a Title I claim. Because the original language was an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires. So that seems to presuppose a disability. Correct. And what with a disability and a qualified individual, but it still says because of the disability under the definition of discrimination. And also, the reason that Congress removed from that term in 2008 was because the entire reason for the amendments to the ADA in 2008 had nothing to do with the qualified individual language. It had to do with the fact that the United States Supreme Court rendered two decisions that was construing the term disability to Congress. Specifically, it says its express purpose in amending the ADA in 2008 was to expand the definition of disability. It did not say it was expanding the definition of a qualified individual. It just wanted to make sure that the courts were not nitpicking what's a disability, what's not a disability. And that is very clear that that was the purpose of the amendments to the ADA in 2008. It was not to overrule other circuit courts throughout the United States who ruled that what matters in determining whether someone's a qualified individual is looking at whether they were a qualified individual when the discriminatory act occurred. And it's absolutely clear that the 24-month rule, one, wasn't discriminatory on the basis of disability. It was on the basis of service. And it did not apply to her when she was a qualified individual. It only applied to her when she was no longer able to perform the essential functions of her job. And this court has made clear in Gonzalez that a person who cannot perform the essential functions of their job at the time of discrimination is not a qualified individual. The district court below was bound by Gonzalez, as is this court, because it is prior panel precedent. And since Johnson, which was the vacated decision from this court that disagreed with Gonzalez, overruled Gonzalez, Johnson was vacated. And since that decision, this court has revisited the issue in Swamchinsky v. May in 2005. That was after the Johnson decision that overruled Gonzalez, but then Johnson got vacated. But again, in 2005, this court said, because the ADA reserves its protections for individuals still able to perform the essential functions of a job, albeit perhaps with reasonable accommodation, a plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination there under. That case, that holding was also reapplied after all of the amendments to the ADA, Lilly Ledbecker Act included. In 2021, this court reapplied the Swamchinsky opinion in the Williams-Evans decision, which we submitted in our supplemental authority pursuant to Rule 28J. So this court has had plenty of opportunities to revisit the argument that the vacated Johnson decision should be resurrected. It's had that opportunity, and every time it has reapplied Gonzalez. Gonzalez cannot be overruled by a panel of this court. The prior panel precedent rule holds that even where the court is convinced that a prior panel decision was incorrect, it still must apply it and uphold it. Let me return back to what we were talking about, about the timing. Let me just give you a hypothetical. So let's assume that a company has a retirement plan, and for whatever reason, this would make no sense, but bear with me, it's hypothetical. The company says, if you are an able-bodied employee and you work for 25 years, you get $100,000 upon your If you are a disabled employee and you work for 25 years, you get nothing upon your retirement. Don't know why a company would do that, but assume they do that. Can anybody sue on the basis of that under your theory, or can just nobody sue? No employee would know whether they were going to be disabled at the time of their retirement or not. What would happen? If that policy is applied during the employee's employment, then I would say that that is a discriminatory act that is adversely affecting them during their employment, because it is certain during their employment that they will not be getting that benefit or that subsidy. So they could come to the court and say, look, I'm going to make a case, the discriminatory policy is discriminating on the basis of disability against me, a qualified individual who is currently employed and able to do the job, and it is certain to be applied to me, and you could potentially get an injunction to prevent that from happening because it is being applied to you. It's adversely affecting you in the imminent future. That's not what happened here, because this 24-month rule in all reality, practicality may never have applied to Ms. Stanley during her employment, so long as she continued to work the 25 years. For her to have brought suit while she was employed would have been to allege hypothetical harm. Would have been to allege, you know, maybe I'll get disabled, and maybe this will be applied to me one day, so find the city in violation of the ADA, even though I may actually end up getting the full subsidy if I work the full 25 years and don't become totally disabled. Hasn't she also waived that argument? In the blue brief, it says, in this section, Ms. Stanley does not claim that she was impacted by the discriminatory 24-month rule during her employment. The discrimination impacted Ms. Stanley in the provision of her post-employment fringe benefits. Correct. In her initial brief, she took the position that the discriminatory act did not impact her during her employment, and in the reply brief, she focuses instead on the adoption of the policy during her employment. So, it's either an alternative argument or making both. She kind of switches gears and says, okay, maybe the discriminatory act wasn't when I was a qualified individual. Maybe it was when I was no longer able to work. So, it's kind of talking out of both sides of the mouth, but it was not discriminatory during her employment, and it was not discriminatory when she was a retiree, because again, it wasn't based on disability. It was based on years of service. And in conclusion, Ms. Stanley has asked this court for better treatment than her similarly situated comparators. The ADA does not entitle the disabled to better or special treatment. It only requires equal treatment, which the city provided. So, we would ask that this court affirm the dismissal and summary judgment orders of the district court below. All right. Thank you, Ms. Carter. And Ms. Zegman, you've reserved some time for rebuttal. Thank you, Your Honor. I would say that the Stanley situation is like the hypothetical that Ms. Stanley had a claim and could have sued in early 2018, late 2017. She had Parkinson's disease. She was being treated. It's a progressive disease, unfortunately, that afflicted this hardworking firefighter. And the handwriting at some point was on the wall. And so, had Ms. Stanley known that the 2003 change had occurred, because she was still under the impression that the rule as it existed when she started her employment was in place, had she known that the 2003 discriminatory act had occurred, then she could have sued in late 2017, early 2018 and said, I have this progressive disease. I anticipate that I am going to become permanently disabled in the relatively near future. It's statistically provable under Parkinson's disease with the crystallizes this issue. And even though the impact, Your Honor, Judge Grant, even though, yes, the impact occurred after the employment, just like it does in a termination case. In a termination case, you're suing after the employment for the impact, but it occurred, the discriminatory act occurred during the employment. So we have discrete points. I mean, if that were true, then Gonzalez would have never been correct. I think that's a different argument. So Your Honor, I respectfully disagree because the point of Gonzalez, Gonzalez should be limited to its facts. Somehow over the years, Gonzalez has been referred to in a much broader statement than what was presented in Gonzalez. What was presented in Gonzalez is before the ADA was in effect, a man was terminated from his employment. After he was terminated, he stayed on the insurance in COBRA. After he was already on COBRA, long after he was terminated, at that time, the employer changed the insurance plan to cap his benefits. The act of discrimination occurred in Gonzalez after the employment ended. So Gonzalez is not on point with the facts of this case. Gonzalez said that the reason the plaintiff didn't have a claim is because he was not a qualified individual with a disability, which we now must read as a qualified individual at or subsequent to the time of the discriminatory act. So even Gonzalez, this court doesn't have to overrule Gonzalez. This court can apply Gonzalez limited to its facts. And as I said initially, the narrowest, there are multiple avenues for Ms. Daly here, and she never got a chance to even amend her complaint to allege it, which we assert we should have the opportunity to do. But even this court can do a very narrow ruling saying, look, Gonzalez, you have to read qualified individual with a disability now as qualified individual on the basis of disability. What's your response to the argument from your friend on the other side that there wasn't a discriminatory act, that whatever change took place within the category of disabled people, not disadvantaging disabled people as opposed to or compared to non-disabled people? There are two parts to that. One is that it matters. We're dealing with the textual discussion of this law. It says no covered entity shall discriminate against a qualified individual on the basis of disability. And that was one of the differences with the ADAA. I dispute my... Right, right, but that's not quite answering my question. The policy here, the old policy said disabled people get lifetime health benefits regardless of how long they served. And the new policy said disabled people get 24 months. Why isn't that a change within the disabled community? I think it'd be different if the old policy was everyone gets lifetime health benefits no matter how long they've worked for us. And then later they said, oh, never mind, non-disabled people get lifetime benefits, but disabled people only get 24 months. Why is that a, why is what actually happened a discriminatory event, since it changed within the disabled universe rather than disabled as compared to non-disabled? The answer to your question, Your Honor, is in the original ordinance, the city literally physically situated two specific groups as the same. They got, it was the people who worked the 25 years, and actually I need to correct, it's, they didn't have to work it. You could actually work 17 years and buy eight years of credited service. So I do take issue with the years of service piece, but they... Could your client have bought eight years of credit service, or I guess five years of credit service for her? She could have purchased, because of her military service, she could have purchased three years, but she didn't have other firefighter service at another town to purchase the extra two. So, so, but my, my point on that is just, Your Honor, that opposing counsel argued that this is all based upon years of service and compassion, but of course the record shows that the city didn't know why they did this policy, and they've been all over the place, and there were surprise documents, and there's a lot of that went into this arbitrary rule. So this one would need to be litigated, I guess is what you're saying. Yes, Your Honor, there's genuine issues of fact, the record is laden with that. I think it's just important that, you know, the, the, on the basis of disability, just to answer your question, on the basis of disability does allow for a category of people, and to Judge White's point, yes, you have this, and Judge, and Ms. Stanley just liked that. If you know about it, somebody has to be able to sue and say, hey, I anticipate, I've got a disability, it's headed in that direction. I anticipate I'm going to be affected by that, and so they could still sue. If Ms. Stanley could have sued in January of 2018, why does the fact that she, why would she lose that claim just because she happens to bring it, to bring it afterwards? And so I think that, you know, that is the key thing. What does Gonzalez-Jones say is it should be really limited to its facts, and Gonzalez-Jones can't touch the issue in this case, because the facts are in the opposite order of things. Thank you, Ms. Eggman. Thank you, Your Grace.